30 U.S. 233 (____)
5 Pet. 233
OOE, EX DEMISE OF WILLIAM PATTERSON, PLAINTIFF IN ERROR
vs.
ELISHA WINN AND OTHERS, DEFENDANTS IN ERROR.
Supreme Court of United States.

*236 The case was argued by Mr Wilde, for the plaintiff in error: no counsel appeared for the defendants.
Mr. Wilde, for the plaintiff in error, contended.
*239 Mr Justice STORY delivered the opinion of the Court.
This case comes before the court by a writ of error from the circuit court for the district of Georgia. The original action was an ejectment brought by the plaintiff in error against the defendants; and at the trial in November term 1829 a bill of exceptions was taken, which raises the only questions which are now before us for consideration.
The bill of exceptions states that the plaintiff offered in evidence, in support of his title, an exemplification, under the seal of the state of Georgia, of a grant or patent to Basil Jones, of a tract of seven thousand three hundred acres of land, dated the 24th of May 1787, and registered the 5th of June of the same year, in the registry of grants in the secretary of state's office. The defendants objected that the exemplification could not be received, until the original patent was *240 proved to be lost or destroyed, or the non-production thereof otherwise legally explained or accounted for; which objection the court sustained, and rejected the evidence. The plaintiff then exhibited a notice served on the opposite party to produce the original grant, and also an original power of attorney from Basil Jones to Thomas Smyth, Jun. dated the 6th of August 1793, to sell and convey (among other tracts) the tract in question. And also offered an affidavit, duly sworn to by the plaintiff in October 1821, that he had not in his possession, power, or custody, the said original grant, or power of attorney, and knew not where they were; and that he had made diligent search among his papers for the said grant and power, and they could not be found. He further offered depositions to prove, that search had been made for the papers of Thomas Smyth, by whom, as attorney in fact of Jones, the land had been conveyed to Patterson, and that no papers could be found. He further proved that he had made search for the original grant or patent in the office of the secretary of state, and the book or register of surveys, in the office of the surveyor general of Georgia, and that the same could not be there found. And he further proved, by a witness, that the exemplification was a true copy from the register of grants and plots in the said offices. He further proved that search had been made among the papers of Basil Jones, in the possession of his widow; and among the papers of George Walker, deceased, who, as counsel for the plaintiff, had once had the muniments of his, the plaintiff's, title in his possession; and also in the office of the clerk of Richmond superior court, where the power of attorney was recorded: but without success. He also proved that he had by public advertisement, in two gazettes of the state of Georgia, offered a reward for the production of the said grant or patent, but no discovery had been made; and that he had searched the executive office of Georgia for the same, and had examined the list of grants or patents, to which the great seal of the state had been refused to be annexed, but the grant to Jones was not found noted upon that list as one of that description. And the plaintiff then moved the court to admit the said exemplification in evidence, the loss or destruction of the original having been sufficiently proved; which the court refused. The plaintiff excepted to the ruling of the court upon both points.
*241 The first exception presents the question whether the exemplification under the great seal of the state was, per se, evidence, without producing or accounting for the non-production of the original; and we are of opinion that it was. The common law is the law of Georgia; and the rules of evidence belonging to it are in force there, unless so far as they have been modified by statute, or controlled by a settled course of judicial decisions and usage. Upon the present question it does not appear that Georgia has ever established any rules at variance with the common law; though it is not improbable that there may have been, from the peculiar organization of her judicial department, some diversity in the application of them in the different circuits of that state, acting, as they do, independent of each other, and without any common appellate court to supervise their decisions.
We think it clear, that by the common law as held for a long period, an exemplification of a public grant under the great seal, is admissible in evidence, as being record proof of as high a nature as the original. It is a recognition, in the most solemn form, by the government itself, of the validity of its own grant, under its own seal; and imports absolute verity as matter of record.
The authorities cited at the bar fully sustain this doctrine. There was in former times a technical distinction existing on this subject, which deserves notice. As evidence, such exemplifications of letters patent seem to have been generally deemed admissible. But where, in pleading, a profert was made of the letters patent, there, upon the principles of pleading, the original under the great seal was required to be produced: for a profert could not be of any copy or exemplification. It was to cure this difficulty that the statutes of 3 Edw. VI. ch. 4, and 13 Elizab. ch. 6, were passed, by which patentees, and all claiming under them, were enabled to make title in pleading by showing forth an exemplification of the letters patent, as if the original were pleaded and set forth. These statutes being passed before the emigration of our ancestors, being applicable to our situation, and in amendment of the law, constitute a part of our common law. A similar effect was given by the statute of 10 Anne, ch. 18, to copies of deeds of bargain and sale, enrolled under the statute of Henry VIII. when offered *242 by way of profert in pleading; and since that period, a copy of the enrolment of a bargain and sale is held as good evidence as the original itself. 1 Phillips on Evidence, ch. 5, § 2, p. 208 to 302; ch. 8, § 2, p. 352 to 356; 408 to 411. Bac. Abridg. title Evidence, F. p. 610, 644, 646. Com. Dig. Evidence, A. 2. 1 Starkie on Evidence, § 33, p. 152. 2 Saund. on Pleading and Evidence, 638. Page's Case, 5 Co. R. 53. 12 Viner's Abridg. title Evidence, A. b. 25, p. 97; A. b. 33, p. 114. 1 Saund. R. 189, note 2.
Such, then, being the rule of evidence of the common law, in respect to exemplifications under the great seal of public grants, the application of it to the case now at bar will be at once perceived; since, by the laws of Georgia, all public grants are required to be recorded in the proper state department.
The question presented by the other exception is, whether under all the circumstances of the case (even supposing the exemplification of the grant had not been admissible in evidence, upon the principles already stated) there was not sufficient proof of the loss of the original to let in the secondary evidence by a copy of the grant. It is understood that the court decided this point wholly upon the ground that the affidavit of Patterson did not conform to a rule made by the court in December 1823. That rule is in the following words: "whenever a party wishes to introduce the copy of a deed or grant in evidence, the oath of the party stating his belief of the loss or destruction of the original, and that it is not in his possession, power, or custody, shall be indispensable in aid of such evidence as he may adduce to prove the loss." Patterson's affidavit was made before the making of this rule (in 1821); and the defect in it is, that it does not contain any declaration of his belief as to the loss or destruction of the original.
It might not be important to decide this point, if it were not understood that the same objection applied to the copy of the power of attorney in the case, as to the copy of the grant. We think that the affidavit and other circumstances of the case, were sufficient to let in the secondary evidence. The grant and power of attorney were of an ancient date; the former being more than forty years old, and the latter but a little short of that period since the execution. Some presumption *243 of loss might naturally arise under such circumstances from the mere lapse of time. There appeared also to have been a very diligent search in all the proper places, and among all the proper persons, connected with the transactions, to obtain information of the existence or loss of the papers. The affidavit of Patterson explicitly denied any knowledge where they were; and declared, that they were not in his possession, power, or custody. We think that according to the rules of evidence at the common law, this preliminary proof afforded a sufficient presumption of the loss or destruction of the originals to let in the secondary proof; and that it was not competent for the court to exclude it by its own rule. However convenient the rule might be to regulate the general practice of the courts, we think, that it could not control the rights of the parties in matters of evidence, admissible by the general principles of law.
The judgment must therefore be reversed, and the cause remanded to the circuit court, with directions to award a venire facias de novo.
Mr Justice JOHNSON dissenting.
I am very well content that the judgment in this court should be reversed, as it went off below on grounds which had little to do with the merits of the case. But I regret that no other grounds have been found for reversal than such as I feel it my duty to enter my protest against.
The truth of the case is, that the plaintiff below was precluded from introducing evidence of a secondary nature, under a rule of practice of five or six years standing in that circuit, the benefit of which was strenuously claimed by the opposite counsel. The court would have permitted the copy grant and copy power of attorney offered in evidence, to go to the jury upon the proof of loss of the originals, which was introduced; but as all the evidence which can be adduced in such cases will be found very generally to leave the case subject to the possibility that the deed (except in cases of positive destruction) may still be in the party's own hands, or of another for him; the experience of that court, as well as the practice of the state courts, and the received doctrine that such proof is addressed to the legal discretion of the judge, *244 had caused that court to require, by rule, the expurgatory oath of the party, in a prescribed form, such as any man may take in an honest case.
An affidavit of the plaintiff was tendered, but not in the form prescribed, and in a form which did not amount to a substantial compliance with the rule; since the affidavit so tendered might have been made consistently with truth, and yet the deed may, by possibility, have been delivered into the keeping of the affiant's next-door neighbour; at least so it appeared to that court. It is true, it was of old date, and even antecedent to this suit; but then the plaintiff was still in life, and at any hour within the six years since the rule was adopted might have amended it.
It appears by the first bill of exceptions, that at the trial the plaintiff's counsel first offered in evidence a certified copy of the grant, without offering, in any mode whatever, to account for the absence of the original; not even the defective expurgatory oath, already noticed: so that, non constat, but that the original was then on the table before him. The defendant's counsel objected, on the ground "that such exemplification could not be received until the original grant or patent was proved to be lost or destroyed, or the non-production thereof otherwise legally explained or accounted for." This doctrine the court sustained; and this is now to be overruled, and the doctrine established, that "in the state of Georgia a copy grant certified by the secretary of state, is of the same dignity with the original grant, and per se evidence in ejectment."
Although I do not know that it would make any difference in the law of the case, yet it is necessary to examine this bill of exceptions carefully, to understand its true meaning. The copy tendered has been supposed to be authenticated under the seal of the state, and the printed brief states it to be under the great seal. The word great is not in the exception, and as the whole matter thus set out is made part of the bill of exceptions, by referring to it, it will be seen that the seal is only appended to the governor's certificate to the character of the officer who certifies it; and his certificate only goes to the fact that the writings exhibited are true copies from the record book of surveys and the register of grants. It is not then *245 certified that such a grant was made or issued, but only that the above is a "true copy from the register of grants:" which I propose to show is only a certified copy of a copy.
But the general principle involved in this decision is one of infinitely greater importance than a mere rule of evidence. It is no less than this; how far each state is to be permitted to fix its own rule of evidence, as applicable to its own real estate.
The course of reasoning, I presume, on which this doctrine is to be fastened upon the jurisprudence of Georgia, is this: "such is the doctrine of the common law; and the common law being the law of Georgia, ergo such must be the law of Georgia."
But, until better advised, I must maintain that neither the major nor minor proposition here can be sustained; that the one is incorrect in the general, the other true only in a modified sense; and in that sense will not support the doctrine of this bill of exceptions.
If it is the correct sense of the common law that the exemplification of a patent is as good evidence as the patent itself, I am yet to be made acquainted with the authority that sustains the doctrine. I am sure that Page's case (5 Coke), commonly cited as the leading case in its support, establishes no such principle. It relies expressly on the British statutes for the sufficiency of the exemplification of the patent and the right to use it in the profert, and the exemplification is introduced into the cause in order to correct an alteration that had been made in the date of the original patent, the original being then also before the court.
But it would be a waste of time to run over cases upon this question, when we know that the force or authenticity given to such exemplifications is derived from the statutes 3 and 4 Edw. VI. ch. 4; and 13 Elizab. ch. 6; and then only of patents since 27 Henry VIII. Now how is it possible that such secondary evidence should have been good at common law, and yet need the aid of those statutes to sustain it?
In the passage in the Institutes on this subject, the introduction of these exemplifications of patents is expressly treated as an exception to the general rule. Co. Litt. 225. Hargrave's Co. Litt. 314. That a patent is proved by its own seal, we find *246 laid down in many places, and has always been the law of Georgia. On the other member of this syllogism it is not to be questioned; that in Georgia, as well as in every other state in the union, the common law has been modified by local views, and settled judicial practice. So that, were it generally true as laid down, that at common law the copy of the grant was equal in dignity as evidence to the original, still, unless so recognized in Georgia, it is not the law of Georgia.
Now, to say nothing of my own "lucubrationes viginti annorum," there is not a professional man in Georgia who does not know that such has never been the rule of judicial practice in that state. I may subjoin in form of a note the most ample proof on this subject, and there is a reason in the practice of their land office for this principle, which is too well known to every man in that country to leave a doubt of the correctness with which they have applied the rules of evidence to their actual practice in the trial of land causes. I make no doubt that there are at this moment thousands of grants lying unclaimed in the land office, every one of which has been copied into the register. The truth is, the grant is a separate thing, from the true original; and the facsimile of it (if it may be so called in the register,) is nothing more than a copy; so that the paper here dignified with the epithet of an exemplification is nothing more than a copy of a copy, and therefore always considered in practice as evidence of an inferior order.
The courts of that state have latterly relaxed in requiring evidence of loss; but even at this day, such evidence cannot be received in any of their courts, without an affidavit from the party presenting it, of his belief in the loss or destruction of the original.
And there are other reasons in support of this practice: for instance, suppose the copy on the register of grants should be found variant from the original, without imputation of fraud in the latter, it is unquestionable that the original must prevail. So also in case of interlineation; erasure or alteration of the original, why should the party be permitted to escape the penalties of the law by suppressing it, and producing a correct copy from the register?
The second bill of exceptions goes to the exclusion of the *247 copy deed, for want of a substantial compliance with the rule of court. If this court mean to express the opinion, that the rule was substantially complied with, it is one of those mere matters of opinion, which are not to be argued down. Certainly the defect already mentioned is imputable to the affidavit that was tendered; and there was no want of time to have made it conform to the rule. But if it be insisted that the court transcended its powers in making such a rule, then may the practice of the state and United States courts from time immemorial, and the actual existing practice of the courts of the states at this day, as well as the reason of the thing, be urged in its vindication: and if it be objected that the case was one in which the court below might have relaxed its rule; then it may be fairly asked, how is it possible for one mind to dictate to another on such a subject? It is an exercise of discretion which can be limited and directed by no fixed rule.
This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Georgia, and was argued by counsel; on consideration whereof, it is considered and ordered by this court that the circuit court erred in refusing to allow the exemplification of the grant to Basil Jones mentioned in the record to be read in evidence as in the exceptions of the plaintiff is mentioned. Whereupon it is ordered and adjudged by this court that the judgment of the said circuit court in this cause be, and the same is hereby reversed, and that this cause be and the same is hereby remanded to the said circuit court, with instructions to award a venire facias de novo.